# 12-1860-cv(L)

## 12-2670-cv(CON), 12-2671-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆━◆

CAITLIN SANCHEZ, performing as Dora the Explorer,

*Plaintiff-Appellant,*

—against—

MTV NETWORKS, a division of Viacom International, Inc.,
dba Nickelodeon, NICKELODEON/VIACOM CONSUMER PRODUCTS, INC.,

*Defendants-Appellees,*

—and—

BALESTRIERE FARIELLO,

*Intervenor-Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEES MTV NETWORKS AND
## NICKELODEON/VIACOM CONSUMER PRODUCTS, INC.
## [REDACTED]

STEPHEN FISHBEIN
KIRSTEN NELSON CUNHA
SHEARMAN & STERLING, LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Appellees MTV Networks and Nickelodeon/Viacom Consumer Products, Inc. state

as follows:

(i)     MTV Networks, now known as Viacom Media Networks, is a division of

Viacom International Inc.;

(ii)     Viacom International Inc. is a wholly owned subsidiary of Viacom Inc.;

(iii)     Viacom Inc. is a publicly held company with no parent corporation, and no

publicly held company owns 10% or more of Viacom Inc.'s stock; and

(iv)     Nickelodeon/Viacom Consumer Products, Inc. is not a separate corporate

entity.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iv

ISSUES PRESENTED......................................................................1

STATEMENT OF THE CASE..............................................................1

STATEMENT OF FACTS ...................................................................2

      A.     Sanchez's Voiceover Work On "Dora The Explorer"...............2

      B.     Sanchez's Lawsuit Against Viacom ..........................................3

      C.     The Settlement Agreement .......................................................4

      D.     Sanchez's Acceptance Of The Benefits Of The Settlement Agreement ...............................................................................6

      E.     Sanchez's First Motion To Vacate The Settlement ...................6

      F.     Sanchez's Second Motion To Vacate The Settlement...............7

SUMMARY OF ARGUMENT ............................................................10

STANDARD OF APPELLATE REVIEW...............................................13

ARGUMENT .................................................................................14

    I.     THE DISTRICT COURT'S APPROVAL OF SANCHEZ'S SETTLEMENT DID NOT VIOLATE HER DUE PROCESS RIGHTS...........................................................................14

      A.     Sanchez Was Adequately Represented.....................................16

      B.     The District Court's Purported Failure To Follow State Law Procedures Was Not A Due Process Violation........................20

    II.    THE DISTRICT COURT PROPERLY REJECTED SANCHEZ'S MOTION TO VACATE THE SETTLEMENT FOR LACK OF SUBJECT MATTER JURISDICTION .............................................25

A.      A Final Judgment May Not Be Vacated Under Rule
        60(b)(4) Where There Is An "Arguable Basis" For
        Jurisdiction ................................................................................26

B.      The District Court Had More Than The Requisite Arguable
        Basis For Jurisdiction Under Section 301 Of The Labor
        Management Relations Act .......................................................28

C.      The District Court Also Had Jurisdiction Based On
        Diversity Of Citizenship Under 28 U.S.C. § 1332(a)..............32

CONCLUSION ........................................................................................34

## TABLE OF AUTHORITIES

### CASES

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)................................................29

*Avco Corp. v. Machinists,* 390 U.S. 557 (1968) ......................................................28

*Burke v. Smith*, 252 F.3d 1260 (11th Cir. 2001)................................................. 22, 23

*Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998) ............................................. 22, 23

*Caterpillar Inc. v. Lewis*, 117 S. Ct. 467 (1996)......................................................33

*Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940)...............27

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ....................................................16

*Doe v. Constant*, 354 F. App'x 543 (2d Cir. 2009) ......................................... 14, 16

*Dragone v. M.J. Raynes, Inc.*, 695 F. Supp. 720 (S.D.N.Y. 1988) ........................29

*Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38 (2d Cir. 1989) ......................23

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180 (2d Cir. 2006) ............. 14, 18

*Harless v. CSX Hotels, Inc.*, 265 F. Supp. 2d 640 (S.D.W. Va. 2003)...................30

*Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35 (2d Cir. 1997)..........................29

*Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*,
    456 U.S. 694 (1982) ...........................................................................................27

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987) ...............29

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).............................29

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)................................................28

*Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642 (2d Cir. 1999) ...........................21

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986)............................................. *passim*

*Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007)...................................................14

*Scott Eden Mgmt. v. Kavovit*, 149 Misc. 2d 262 (N.Y. Sup. Ct. 1990) ..................25

*Shapiro v. Logistec USA, Inc.*, 412 F.3d 307 (2d Cir. 2005) ...................... 13, 32, 33

*United States v. Bank of N.Y.*, 14 F.3d 756 (2d Cir. 1994) ......................................15

*United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657 (1st Cir. 1990) ...................27

*United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010)............. *passim*

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003) ....................................................29

*Vera v. Saks & Co.*, 424 F. Supp. 2d 694 (S.D.N.Y. 2006).............................. 28, 29

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................16

*Woodward v. D.H. Overmyer Co.*, 428 F.2d 880 (2d Cir. 1970) ...........................33

## STATUTES

28 U.S.C. § 1332 ............................................................................................. *passim*

28 U.S.C. § 1441 .......................................................................................... 13, 32

29 U.S.C. § 185 ....................................................................................... 12, 28, 31

C.P.L.R. § 1208 ...................................................................................................21

## RULES

Fed. R. Civ. P. 60(b) ....................................................................................... *passim*

S.D.N.Y. Local Rule 83.2 .............................................................................. 20, 21

## ISSUES PRESENTED

1.      Whether Plaintiff-Appellant Caitlin Sanchez has established a constitutional due process violation sufficient to vacate the judgment approving her settlement with Defendant-Appellee Viacom[1] under Fed. R. Civ. P. 60(b)(4).

2.      Whether the District Court properly denied Sanchez's motion under Fed. R. Civ. P. 60(b)(4) to vacate the judgment for lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

Sanchez, a minor, performed voiceover work on the Viacom program "Dora the Explorer" for three years starting in 2007.  Sanchez Complaint filed October 14, 2010 ("Complaint" or "Compl.") ¶¶ 32, 52; A 39, A 48.[2]  In October 2010, Sanchez filed a lawsuit in New York Supreme Court alleging that she was insufficiently compensated for the services she provided.  A 25.  On October 15, 2010, Viacom removed the action to federal court based on federal question jurisdiction under Section 301 of the Labor Management Relations Act.  A 19. Sanchez filed a motion to remand on October 20, 2010.  Dkt. No. 5.

---

[1] MTV Networks and Nickelodeon Consumer Products are divisions of Viacom Inc. and are referred to herein collectively, together with Viacom Inc. and its wholly owned production subsidiary Uptown Productions Inc., as "Viacom."

[2] Citations to the Joint, Confidential, and Special Appendices are in the form of "A __," "CA __," and "SPA __," respectively.  Citations to Sanchez's Opening Brief dated October 26, 2012 are in the form "Sanchez Br.," and citations to the docket entries in the District Court below are in the form "Dkt. No.__."

The parties engaged in settlement discussions and on November 15, 2010, they entered into a Settlement Agreement.  CA 24.  The District Court (Judge Thomas P. Griesa) approved the settlement on November 30, 2010.  CA 59. Sanchez subsequently retained new counsel and moved to vacate the District Court's order approving the settlement.  Dkt. No. 31.  Sanchez also contested her prior counsel's entitlement to attorney's fees.  Dkt. No. 63.  The District Court denied the motion to vacate at hearings on November 1, 2011 (A 461) and March 23, 2012 (A 545), and in an order dated April 3, 2012 (SPA 1).  The Court issued a decision awarding attorney's fees to Sanchez's prior counsel on June 8, 2012. SPA 4.  Sanchez appealed from the District Court's rulings on April 27 and June 25, 2012, respectively.[3]

## STATEMENT OF FACTS

### A.    Sanchez's Voiceover Work On "Dora The Explorer"

Sanchez performed as the voice of "Dora" from in or around April 2007 until 2010.[4]  Compl. ¶¶ 32, 52; A 39, A 48.  Sanchez's voiceover work was

---

[3] On May 30, 2012, Viacom moved to dismiss the appeal for lack of jurisdiction for failure to file a timely notice of appeal within 30 days of the District Court's denial of the motion to vacate on November 1, 2011.  The motion to dismiss was denied on August 14, 2012, when the Court found that Sanchez's notice of appeal was timely, having been filed within 30 days of the District Court's April 2012 order.

[4] Sanchez was the second of the three actors who have voiced the "Dora" character to date.   *See* A 439-40.

governed by a Collective Bargaining Agreement ("CBA") between Viacom's production subsidiary, Uptown Productions Inc., and the American Federation of Television and Radio Artists ("AFTRA").  A 493.  Sanchez also entered into a Services Agreement (the "Services Agreement") with Viacom.  A 64.  As permitted by the CBA, the Services Agreement provided Sanchez with more favorable terms than the CBA for some of the services that she performed.  A 386 ¶ 4.

### B.    Sanchez's Lawsuit Against Viacom

In October 2010, after her work for Viacom had concluded, Sanchez filed a Complaint in New York Supreme Court alleging that she was inadequately compensated for her work.  A 25.  Sanchez alleged that she was pressured into signing the Services Agreement and that the Agreement was unconscionably vague.  Sanchez also alleged that Viacom breached the Services Agreement by failing to compensate her as provided therein.  Compl. ¶¶ 36, 49, 50, 54, 56, 57, 97; A 40, A 47, A 49, A 60.

On October 15, 2010, Viacom removed the action to federal court pursuant to Section 301 of the Labor Management Relations Act.  A 19.  Sanchez contested federal jurisdiction and filed a motion to remand.  Dkt. No. 5.  On October 26, 2010, Viacom filed a motion to dismiss the Complaint, or for a stay in favor of arbitration, and opposed Sanchez's motion to remand.  Dkt. Nos. 9, 13.  In light of

pending settlement discussions, the parties entered a stipulation on November 8, 2011 extending deadlines on the various motions.  Dkt. No. 16.

### C.    The Settlement Agreement

The parties settled their dispute in a Settlement Agreement



CA 24.

CA 28-29 ¶ 5; *see also* A 386-87 ¶ 6.

CA 28 ¶ 5(b).

4

████████████████████████████████

██████████████████████████

████ CA 31 ¶ 7.

███████████████████████ A 387-88 ¶¶ 9, 10.

█████████████████████████████

█████████████████████████████

████████ CA 29-31 ¶ 6.  This was a significant benefit to Sanchez in that the core of her dispute with Viacom was that she was being underpaid through "creative accounting" methods.  A 329 ¶¶ 1, 2.  According to Sanchez's mother, the goal in suing Viacom was to obtain "a forensic accounting of Nickelodeon," to obtain "discovery of Nickelodeon's accounting and profits," and to be compensated based on Viacom's actual profits from the "Dora" franchise.  *Id.*

█████████████████████████████

█████

██████████████████████████

█████████████████ CA 2. ████████████

██████████████████████████████

CA 22, CA 18, CA 13. ██████████████████

███████████████████████████

████████ CA 3-7. ██████████████████

████████████████████████████████████████████

████████████████████████████████████████ CA 7

¶ 19, CA 22-23, CA 38 ¶ 22(c).

The Court approved the settlement on November 30, 2010 (CA 59) and so-

ordered a Stipulation of Dismissal with Prejudice on December 1, 2010.  A 325.

**D.    Sanchez's Acceptance Of The Benefits Of The Settlement Agreement**

Following the settlement, ███████████████████████████████

████████████  A 386-87 ¶¶ 6-8. ██████████████████████

████████████████████████████████████████

A 387-88 ¶¶ 9, 10.

**E.    Sanchez's First Motion To Vacate The Settlement**

After having accepted the benefits of the settlement, Sanchez fired her

previous counsel and retained new counsel, Susan Chana Lask.  Through her new

counsel, Sanchez filed a motion to vacate the settlement and to disgorge attorney's

fees from prior counsel Balestriere.  Dkt. No. 31.  The gist of the motion to vacate

was that prior counsel misled Sanchez concerning the settlement and had otherwise

acted improperly, which Sanchez argued amounted to a "fraud on the court"

justifying setting aside the settlement.  *See* Memorandum of Law in Support of

Plaintiff's Motion to Vacate Stipulation of Dismissal & Infant's Compromise,

Disgorge Attorney Fees, Sanctions and Other Relief filed June 30, 2012, Dkt. No.

37 at 9.  In support of the motion, Sanchez and her parents submitted affidavits

detailing the alleged misdeeds of prior counsel.  A 329, A 378, A 382.

The Court heard oral argument on the motion to vacate on November 1,

2011.  A 430.  At the hearing, the Court inquired at length as to Sanchez's

compensation arrangements, both under her original Services Agreement and as

contemplated by the Settlement Agreement.  *Id*.  The Court determined that an

████████████████████████████████████████████ was in Sanchez's best

interests.  A 457.  The Court denied the motion to vacate on the understanding that

Sanchez would exercise her audit rights.  A 461.  The Court also invited the parties

to make additional submissions on the attorney's fee issue.  A 465-67.

## F.    Sanchez's Second Motion To Vacate The Settlement

Following the November 1, 2011 hearing, Sanchez again replaced her

counsel, this time retaining current counsel, Robert I. Harwood.  Dkt. Nos. 60, 64.

New counsel filed an opposition to Balestriere's fee application and, as part of that

opposition, renewed Sanchez's challenge to the Settlement Agreement.  *See*

Plaintiff's Memorandum of Law in Opposition to Former Counsel's Application

for Attorneys' Fees and Other Relief, filed under seal on February 10, 2012, Dkt.

No. 63.  Among other things, Sanchez now asserted that the District Court lacked

subject matter jurisdiction to approve the settlement.  *Id.* at 21.

7

The District Court held a conference on March 7, 2012.  A 470.  The Court expressed frustration that Sanchez had not ████████████████████████████ ███████████████████████████ and that had been discussed at the prior hearing.  A 486-488.  The Court ordered a third hearing at which Sanchez and her legal guardian were directed to be present.  A 488, A 490.

The parties appeared again on March 23, 2012, this time with Caitlin Sanchez present.  A 508.  At the outset of the conference, Sanchez's counsel informed the Court that he had proposed an audit to Viacom and that he was in discussion with Viacom's counsel as to the terms of the audit.  A 509-510. Sanchez's counsel asked that the pending motions be stayed while the parties pursued an audit.  A 510.  Sanchez's counsel also informed the Court that Caitlin Sanchez wished to address the Court directly and proposed that Sanchez speak to the judge *ex parte*.  *Id*.

The Court heard *ex parte* from Sanchez, her mother, and her court-appointed legal guardian.  A 526-533.  Caitlin Sanchez informed the Court that, contrary to what her counsel had just told the Court, she did not want to pursue an audit and that she wished to disaffirm her Services Agreement with Viacom because, in her words, "I showed an unequivocal intent to no longer be bound to that agreement." A 526-527.  Following the *ex parte* meeting with Sanchez, the Court addressed all of the parties as follows:

> What happened was that Caitlin spoke and said she would like to undo
> the whole thing going back to 2007. . . .  Now, I don't know where to
> start.  It's just, the idea of simply undoing everything, it can't be
> undone.  It simply can't.  What it really amounts to is asking for more
> money.  But the performances occurred, they can't be undone.  The
> recordings or whatever were rerun, the reruns occurred.  What
> occurred, occurred.  You can't just erase that off the map of the world.
> And what it amounts to is, all that was done, but now, there should be
> more money, that's what this is really saying.

A 534.  At the conclusion of the hearing, the Court stated that it was standing by its

prior ruling denying the motion to vacate the settlement.  A 545-47.

By order dated April 3, 2012, the Court confirmed its denial of Sanchez's

motion to vacate the settlement.  SPA 1.  The Court also determined that it had

subject matter jurisdiction over the matter.  *Id*.

On June 8, 2012, the Court issued an opinion as to attorney Balestriere's fee

application.  SPA 4.  In reciting the history of the matter, the Court explained that

it had denied the motion to vacate "and rejected this challenge to the settlement,

which the court found to have been a fair and reasonable settlement for Sanchez . .

. ."  SPA 7.  As to the attorney's fees, the Court found that Balestriere was an

"experienced litigator" who had spent substantial time working on Sanchez's case.

SPA 10.  The Court stated, "[a]lthough Sanchez now questions the wisdom of the

settlement, it cannot be denied that she quickly obtained a substantial sum of

money and valuable audit rights, and the court has repeatedly approved the

reasonableness of the settlement."  SPA 9-10.

9

## SUMMARY OF ARGUMENT

Sanchez's settlement with Viacom provided her with substantial and immediate benefits well beyond her rights under the Services Agreement. ███

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

Sanchez accepted the settlement ███████████████████████████

██████████████████████ Only after she obtained new counsel did Sanchez seek a "do over" of the settlement in an effort to obtain more money.[6]

Recognizing that a minor's interests were at stake, the District Court bent over backwards to fully understand and assess Sanchez's belated concerns about the settlement. The Court received extensive affidavit testimony from Sanchez and her parents.  Three separate hearings were held at which the Court received

---

[6] For reasons that are not clear to Viacom, Sanchez has never availed herself of the audit rights ████████████████████████████████.

comprehensive information as to the financial aspects of the settlement.  The Court received briefing on the issue of attorney's fees and issued a detailed written opinion explaining its fee award.  The Court even permitted Sanchez and her court-appointed guardian to address the Court *ex parte*.  On this record, the Court's ultimate conclusion that the settlement was "a fair and reasonable settlement for Sanchez" (SPA 7) was unquestionably well supported.

It is equally clear that Sanchez received all the process she was due in the course of the proceedings below.  During the negotiation of the settlement, she was represented by counsel, to whom the Court ultimately awarded substantial fees in view of his experience and the value of his work for Sanchez.  While Sanchez now asserts that her counsel was conflicted, her complaints are no more than belated dissatisfaction with the result of the settlement.  She identifies no actual conflicting interest by her counsel or collusion with Viacom; in fact, her counsel was working on a contingency fee and had every incentive to maximize her financial recovery.

The legal standard for vacating a final judgment on the basis of a due process violation under Fed. R. Civ. P. 60(b)(4) is a demanding one.  In *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010), the United States Supreme Court held that a district court's failure to follow mandatory statutory requirements does not render a judgment void for want of due process.  The Supreme Court explained that a final judgment will be vacated only in the "rare

11

instance" in which the judgment was obtained in a manner that "deprives a party of notice or the opportunity to be heard." *Id.* at 1377.  Sanchez cannot meet this demanding standard.  She clearly had notice of the settlement proceedings and even submitted a personal affidavit in support of court approval.  She also had every opportunity to be heard in the Court below, including at an *ex parte* conference with Judge Griesa.  She was also represented by experienced counsel throughout the proceedings.

Sanchez's argument that the District Court lacked subject matter jurisdiction is equally unavailing.  Once a judgment is final and no direct appeal has been taken, a collateral attack on the court's subject matter jurisdiction will only succeed where the district court engaged in a "clear usurpation of power." *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986).  So long as there is even an "arguable basis" for a federal court's subject matter jurisdiction, the judgment will stand. *Id.*

Here, the District Court had jurisdiction under Section 301 of the Labor Management Relations Act, which confers federal jurisdiction in matters requiring the interpretation or substantive analysis of collective bargaining agreements.  Sanchez's work for Viacom was governed by such an agreement, which was incorporated into her Services Agreement.  Sanchez's Complaint alleged that she was insufficiently compensated for several types of services where the compensation was dictated by the collective bargaining agreement.  Sanchez's

Complaint also alleged a direct violation of the collective bargaining agreement and, further, that the Services Agreement was unconscionably vague insofar as it incorporated provisions of the collective bargaining agreement. All of these claims required interpretation and analysis of the collective bargaining agreement.

Subject matter jurisdiction in the District Court was also appropriate on the basis of diversity of citizenship under 28 U.S.C. § 1332(a). While procedures governing removal would have prevented Viacom from removing the case from state to federal court on the basis of diversity (because Viacom is a resident of New York, the same state in which the lawsuit was brought, *see* 28 U.S.C. § 1441(b)), this restriction is a procedural rule, not a rule of substantive jurisdiction. *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 313 (2d Cir. 2005). Since all the substantive requirements for diversity jurisdiction were met, the District Court cannot be said to have engaged in a "clear usurpation of power" which is the standard that Sanchez must satisfy to succeed in collaterally attacking the District Court's subject matter jurisdiction following entry of a final judgment. *Nemaizer*, 793 F.2d at 65.

<u>**STANDARD OF APPELLATE REVIEW**</u>

A district court's denial of a motion under Fed. R. Civ. P. 60(b)(4) to vacate a judgment as "void" is reviewed *de novo*, except to the extent that the decision is

based on the district court's findings of fact, which are reviewed for clear error. *Doe v. Constant*, 354 F. App'x 543, 545 (2d Cir. 2009).[7]

## **ARGUMENT**

## I.    **THE DISTRICT COURT'S APPROVAL OF SANCHEZ'S SETTLEMENT DID NOT VIOLATE HER DUE PROCESS RIGHTS**

Fed. R. Civ. P. 60(b) authorizes a court to set aside a final judgment for a "limited set of circumstances." *Espinosa*, 130 S. Ct. at 1376.  Courts recognize that, because parties are generally entitled to rely on the finality of judgments, they should not be "lightly reopened." *Nemaizer*, 793 F.2d at 61.  Even where errors might properly have been raised on direct appeal, they do not necessarily require that a judgment be overturned under Rule 60(b). *Espinosa*, 130 S. Ct. at 1378. Indeed, it is well accepted that Rule 60(b) "allows extraordinary judicial relief" and it should therefore be invoked "only upon a showing of exceptional circumstances." *Nemaizer*, 793 F.2d at 61.

In applying Rule 60(b) to court-approved settlement agreements, this Court has further observed that a settlement is a contract between the parties and that "once entered into, the contract is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  Thus, "[w]hen a party makes a deliberate,

---

[7] In *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180 (2d Cir. 2006) this Court determined that the standard of review for a Rule 60(b)(4) ruling should be abuse of discretion. *Id.* at 187 n.7.  Subsequent cases have nevertheless applied the *de novo* standard without citing *Grace*. *See, e.g.*, *Doe*, 354 F. App'x at 545.

strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994). Any other rule "would undermine the finality of judgments in the litigation process." *Id.*

In this case, Sanchez argues that the District Court should have vacated the final judgment approving her settlement on the grounds that "the judgment is void" under Rule 60(b)(4). However, as the Supreme Court has held, a "void" judgment for these purposes is only a judgment "affected by a fundamental infirmity" and "[t]he list of such infirmities is exceedingly short." *Espinosa*, 130 S. Ct. at 1377. While a deprivation of constitutional due process may qualify, relief from a final judgment is appropriate only "in the rare instance" where a due process violation "deprives a party of notice or the opportunity to be heard." *Id.* Procedural defects, or even blatant failures to adhere to statutory requirements, do not rise to the level of a due process violation under Rule 60(b)(4) where the moving party had notice of the proceedings and an opportunity to be heard. *Id.*

In support of her due process argument, Sanchez argues (i) that she was not adequately represented in the District Court, and (ii) that the District Court's approval of the settlement failed to adhere to procedures contemplated under New York State law for the approval of settlements by minors. Neither of these grounds rises to the level of a constitutional due process violation, let alone one of those

"rare instances" in which a party was deprived of "notice or the opportunity to be heard." *Espinosa*, 130 S. Ct. at 1377.[8]

## A.    Sanchez Was Adequately Represented

During the entirety of the proceedings leading up to the entry of judgment approving the settlement, Sanchez was represented by attorney John Balestriere, the same counsel who represented her in filing her original claim against Viacom. Balestriere signed Sanchez's original Complaint against Viacom (A 63), appeared on behalf of Sanchez when the matter was removed to the District Court (Dkt. No. 4) and made filings on her behalf as to removal and other issues (Dkt. Nos. 5, 6, 17, 20). ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████     CA 38.  The District Court's decision

---

[8] In addition, Sanchez has not properly preserved her due process argument for appeal.  In the District Court, Sanchez challenged the judgment approving her settlement on the ground that misconduct by attorney Balestriere amounted to a "fraud on the court" (Dkt. No. 37 at 9) and that is how the District Court understood her argument.  SPA 7.  While Sanchez's reply brief contained a single sentence saying that attorney Balestriere's "frauds" violated Sanchez's due process rights (Reply Memorandum of Law in Support of Plaintiff's Motion to Vacate Stipulation of Dismissal & Infant's Compromise, Disgorge Attorney Fees, Sanctions and Other Relief, filed August 23, 2011, Dkt. No. 47 at 4), that fleeting reference to due process was insufficient to preserve the issue for appeal.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 n.4 (2d Cir. 2000) ("This single, conclusory, one-sentence argument is insufficient to preserve any issue for appellate review."); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (one sentence argument in brief did not preserve issue for appeal); *Doe*, 354 F. App'x at 544 (declining to consider Rule 60(b)(4) due process argument not raised below).

regarding Balestriere's fee application also acknowledged that Balestriere

represented Sanchez (SPA 5) and that he is "an experienced litigator" who was

entitled to fees for the substantial work he did on Sanchez's behalf.  SPA 10.

The fact that Balestriere entered into a written representation agreement with

Sanchez's mother does not mean that Sanchez herself was unrepresented.  The

settlement documentation and the proceedings in the District Court make clear that

Balestriere represented Caitlin Sanchez *and* her parents.  ████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████  CA 42.  ████████████████████████████

██████████████████████████  CA 13.

When Sanchez opposed Balestriere's fee application on the ground that

Balestriere only represented her mother (per the written representation agreement)

and not Caitlin herself, the District Court found as follows:

> However, Balestriere filed a lawsuit as Sanchez's attorney, achieved a
> settlement on her behalf, presented the settlement agreement to the
> court as her attorney (after she and both of her parents signed it), and
> Sanchez accepted the benefits of that settlement, which the court has
> approved.  Nobody ever objected that the Firm did not represent
> Sanchez until now.  Given these facts, it would be a strange result for
> the court now to find that the Firm did not actually represent Sanchez
> and is entitled to no fees simply because Sanchez herself did not sign
> the contingency fee agreement, which the court did not even treat as
> binding.

SPA 11.  These factual findings were not clear error, and should be followed here.

Having accepted Balestriere as her attorney for filing a complaint on her behalf,

negotiating a settlement and accepting its benefits, Sanchez cannot now claim a

due process violation on the ground that she was unrepresented.

Sanchez's reliance on *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d

180 (2d Cir. 2006) highlights the weakness of her argument that she was denied

due process as a result of inadequate representation.  In *Grace*, a corporation

entered a court-approved settlement, which was thereafter vacated under Fed. R.

Civ. P. 60(b)(4) on due process grounds.  In negotiating and entering the

settlement, the corporation acted *pro se* and was not represented by any lawyer

whatsoever.  *Id.* at 193.  The only person acting on behalf of the corporation was a

former director, whose interests were "completely adverse" to the corporation,

which had claims against the director.  *Id.* The facts in *Grace* are thus entirely

different from the present case in which Sanchez was represented by counsel (Mr.

Balestriere) throughout the proceedings.  Indeed, the District Court here was

sufficiently impressed with the performance of Sanchez's counsel, that it awarded

substantial attorney's fees.  Because Sanchez had access to competent counsel who

acted on her behalf, she clearly was represented and her due process argument

based on *Grace* is without merit.

Sanchez's effort to establish a due process violation on the basis of

Balestriere's alleged conflict of interest also fails.  Sanchez identifies no conflict

other than her frustration that the ultimate settlement was less favorable than she

would like.  Sanchez Br. 23-24.  Her arguments to the effect that the settlement

provided her with only "nominal" benefits and "only enriched counsel" (*Id*. 23) do

not come anywhere close to establishing an actual conflict of interest, let alone a

constitutional due process violation that deprived her of an opportunity to be heard.

In particular, Sanchez has presented no evidence of any collusion between

Balestriere and Viacom or that Balestriere was motivated to do anything other than

maximize Sanchez's recovery.  To the contrary, Balestriere's fees were calculated

as a percentage of Sanchez's recovery (*see* SPA 5) and he therefore had a powerful

incentive to get her as much as possible.

Finally, no due process violation arose by virtue of the fact that Sanchez's

mother, Hilda Sanchez, acted as her guardian.[9]  Sanchez Br. 22.  Hilda Sanchez's

agreement to cooperate with Viacom in obtaining court approval of the Services

Agreement (and to indemnify Viacom in connection with any attempted

disaffirmance of the agreement) establishes only that Hilda undertook to assist in

what all of the parties, including Caitlin, agreed to in the Services Agreement,

namely that they would seek court approval.  A 68 ¶ 18, A 75 ¶ C.  The indemnity

did not pit Hilda's interests against her daughter, nor discourage Caitlin from

rejecting the Services Agreement if that is what she chose to do.  In fact, when

---

[9] Following the settlement, Sanchez obtained a court-appointed guardian, who
participated in the proceedings below concerning Sanchez's motion to vacate the
settlement.

Caitlin filed her Complaint against Viacom seeking rescission of the Services

Agreement (which Caitlin now says amounted to a disaffirmance of the Services

Agreement, *see* Sanchez Br. 35), Hilda was her guardian and Balestriere was her

attorney.  These supposedly conflicted parties had no problem counseling Caitlin

to sue Viacom and to assert a claim for rescission of the Services Agreement.  This

is not a conflict of interest and it certainly did not deprive Caitlin of notice or an

opportunity to be heard in the District Court, especially since Caitlin was

represented by experienced legal counsel throughout the proceedings.

### B.    The District Court's Purported Failure To Follow State Law Procedures Was Not A Due Process Violation

Sanchez next argues that her due process rights were violated because the

District Court's approval of her settlement failed to adhere to procedural

requirements contemplated by New York State law.  Sanchez Br. 24-32.  This

argument fails because strict adherence to state procedures was not required and, in

any event, the alleged failure to follow those procedures did not rise to the level of

a constitutional due process violation.

Rule 83.2 of the Local Rules of the United States District Courts for the

Southern and Eastern Districts of New York governs the approval of settlements

on behalf of minors.  The Rule does *not* require strict adherence to New York State

statutes and procedures.  Instead, Rule 83.2 provides that a federal court should

endeavor to conform to state process but may dispense with state procedures where

appropriate. *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 655 (2d Cir. 1999) ("Rule 83.2 is hardly a rigid obligation imposed on district courts."). In *Neilson* the district court declined to follow procedures contemplated by New York Civil Practice Law and Rules § 1208, the same provision cited by Sanchez here. Yet the Second Circuit upheld the settlement, noting that a federal court is not required to reject any settlement that is not compliant with CPLR § 1208 "in every particular." *Id.* at 656.

Even if the procedures identified by Sanchez were strictly required (which they were not), any failure by the District Court to adhere to those procedures did not render the judgment "void" under Rule 60(b)(4). As explained above, Rule 60(b)(4) applies only to constitutional due process violations that deprive a party of notice or the opportunity to be heard. *Espinosa*, 130 S. Ct. at 1377. At issue in *Espinosa* was a bankruptcy confirmation that discharged portions of the debtor's student loan obligations. The Supreme Court determined that the confirmation violated several statutory mandates including (i) the requirement under the Bankruptcy Rules that a party seeking discharge of a student loan debt must commence an adversary proceeding by serving a summons and complaint on affected creditors, and (ii) the requirement under the Bankruptcy Code that a student loan debt may be discharged only upon the bankruptcy court's finding of "undue hardship." *Id.* at 1377-78. The Supreme Court acknowledged that the

21

confirmation process followed by the bankruptcy court deprived the relevant creditor of procedural rights and, further, that the court's failure to make an "undue hardship" determination was a legal error that would have warranted reversal on direct appeal. *Id.* at 1378-80. However, the Supreme Court found that these errors did not rise to the level of a constitutional due process violation sufficient to justify vacating the judgment under Rule 60(b)(4) because the creditor had notice of the proceedings and an opportunity to be heard on the issue of discharge of the student loan debt. *Id.* at 1378, 1380.

Sanchez's case is controlled by *Espinosa*. The procedural rules that Sanchez says were violated—relating to the content of affidavits in support of a minor settlement, and the factors to be considered by a court in approving such a settlement—are analogous to the federal bankruptcy provisions at issue in *Espinosa*. As in *Espinosa*, Sanchez has not established a due process violation because she clearly had notice of and was actively involved in the proceedings. She was represented by counsel and had ample opportunity to participate in both the underlying litigation and the settlement approval process.[10]

---

[10] Sanchez cites only two cases—both from outside the Second Circuit—for the proposition that a district court's failure to follow state law procedures is sufficient to justify vacating a judgment under rule 60(b)(4), *Burke v. Smith*, 252 F.3d 1260 (11th Cir. 2001) and *Carter v. Fenner*, 136 F.3d 1000 (5th Cir. 1998). Both of these cases pre-date the Supreme Court's decision in *Espinosa*, which clearly established that legal errors in a judgment, including the failure to follow mandatory statutory provisions, do not justify relief under Rule 60(b)(4) in the

Sanchez's litany of supposed procedural deficiencies is highly technical and ignores that the substance of these matters was addressed by the District Court. For example, ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████    CA 16 ¶¶ 9-10, CA 20 ¶ 10. ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

CA 14-15 ¶¶ 5-7.  The Court also received and considered extensive analysis of Sanchez's damages claims in connection with her Rule 60(b) motions.  A 431-55; A 514-15.   While Balestriere did not make a fee application at the time that the settlement was initially proposed, the Court subsequently requested a fee application, received submissions on the subject, and ultimately made a detailed ruling.  SPA 4. ██████████████████████████████████████

█████████████████████████████████████    *See Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 39 (2d Cir. 1989) (denying Rule 60(b)(4) motion where movant "made no serious effort to have the court hold a hearing at which he would participate").  When Sanchez later challenged the

---

absence of a constitutional due process violation.  Neither *Burke* nor *Carter* found a due process violation; in fact, the court in *Carter* specifically stated that "constitutional deficiencies" were not alleged.  136 F.3d at 1006.

settlement, the Court held three hearings at which Sanchez and her new attorneys presented substantial argument and evidence.

Finally, it is clear from the record below that the District Court had the benefit of extensive and appropriate information concerning the proposed settlement.  (CA 24), (CA 13, CA 18), (CA 4-7 ¶¶ 11-18), (CA 20 ¶ 10), (CA 15 ¶ 7), (CA 16 ¶¶ 9-10). The key benefits to Sanchez of entering the settlement were clearly presented, including CA 4-6 ¶¶ 12-13, 16-17; *see also* CA 28-31 ¶¶ 5-7.

Once Sanchez challenged the settlement, the Court entertained extensive briefing on the settlement and attorney Balestriere's entitlement to fees, held three separate hearings at which the financial aspects of Sanchez's claim and the proposed settlement were discussed at great length, and even heard directly from

Sanchez and her guardian on an *ex parte* basis.  *See supra* p. 8, Statement of Facts

Part F.  The Court then issued a written opinion setting forth the background of the

case and the Court's conclusion that the settlement was fair and reasonable.

SPA 4.[11]  In short, there can be no question that Sanchez had every opportunity in

the proceedings below to present her position, and that the Court's decision to

uphold the settlement was based on a complete record.

## II.    THE DISTRICT COURT PROPERLY REJECTED SANCHEZ'S MOTION TO VACATE THE SETTLEMENT FOR LACK OF SUBJECT MATTER JURISDICTION

Upon reaching what she apparently believed at the time was a reasonable

settlement (*see* CA 23), Sanchez submitted the settlement for approval to the

District Court.  At no time during the settlement process did Sanchez question the

District Court's jurisdiction; to the contrary, she affirmatively invoked the Court's

jurisdiction to obtain approval.[12]  Only after the settlement was approved—and

Sanchez accepted its benefits—did she retain new counsel who moved to vacate

---

[11] In addition to finding the settlement fair and reasonable, Judge Griesa gave appropriate consideration to the fact that Sanchez sought to undo her agreements with Viacom only after all of the services had been performed and the benefits to her received.  A 534. Trying to unscramble these complex relationships after full performance would be extraordinarily difficult.  *See Scott Eden Mgmt. v. Kavovit*, 149 Misc. 2d 262, 264-65 (N.Y. Sup. Ct. 1990) (after disaffirmance, infant is not entitled to retain advantage of transaction she repudiates and infant will be precluded from disaffirming if parties cannot be returned to original positions).

[12] Sanchez had earlier moved to remand the case to state court, but that remand motion remained unresolved as of the time the parties began discussing settlement.

the settlement for lack of subject matter jurisdiction.  The standard for such a

collateral attack on a final judgment is a strict one:  the moving party must show

that the judgment lacked even an "arguable basis" for jurisdiction.  *Espinosa*, 130

S. Ct. at 1377; *Nemaizer*, 793 F.2d at 65.  In this case, Sanchez is unable to satisfy

this very high standard.

### A.    A Final Judgment May Not Be Vacated Under Rule 60(b)(4) Where There Is An "Arguable Basis" For Jurisdiction

In *Nemaizer v. Baker*, the Second Circuit established the narrow scope for

jurisdictional attacks on final judgments under Rule 60(b)(4).  In that case, the

defendant removed an action to federal court, after which the plaintiff voluntarily

dismissed his claims with prejudice.  The time to appeal expired.  Like Sanchez in

the present case, the plaintiff in *Nemaizer* later sought to vacate the judgment

under Rule 60(b)(4) on the ground that the action was improperly removed and the

district court therefore lacked subject matter jurisdiction.  The Second Circuit

rejected this argument, holding that:  "Even assuming that this case was not

properly within the jurisdiction of the district court, appellees may not now

collaterally attack that court's exercise of jurisdiction."  *Nemaizer*, 793 F.2d at 64.

Importantly, the Second Circuit ruled in *Nemaizer* that even if, in hindsight,

it appeared that the district court lacked subject matter jurisdiction, that did not

render a judgment "void" for purposes of a collateral attack under Rule 60(b)(4).

The Court explained that the plaintiffs could have pressed their jurisdictional

objection before the judgment was entered, or alternatively on direct appeal.  793

F.2d at 64.  "Because they did neither, they are now barred by principles of *res*

*judicata* and the interest in finality of judgments from mounting a collateral attack

on a prior judgment in the present action."  *Id.; see Ins. Corp. of Ireland, Ltd. v.*

*Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that

has had an opportunity to litigate the question of subject-matter jurisdiction may

not, however, reopen that question in a collateral attack upon an adverse

judgment."); *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377

(1940) (federal court's erroneous exercise of subject matter jurisdiction is not

subject to collateral attack).

      The only circumstance in which a subject matter jurisdiction argument will

succeed under Rule 60(b)(4) is if a court had a "total want of jurisdiction"

amounting to a "clear usurpation of power."  *Espinosa*, 130 S. Ct. at 1377;

(quoting *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir.

1990)); *Nemaizer*, 793 F.2d at 65.  As long as there is even an "arguable basis" for

a federal court's subject matter jurisdiction, relief under Rule 60(b)(4) is not

available.  *Espinosa*, 130 S. Ct. at 1377; *Nemaizer*, 793 F.2d at 65.

**B.    The District Court Had More Than The Requisite Arguable Basis For Jurisdiction Under Section 301 Of The Labor Management Relations Act**

Here, the District Court had far more than an "arguable basis" for its exercise of subject matter jurisdiction.  Section 301(a) of the Labor Management Relations Act ("LMRA") provides exclusive federal jurisdiction in cases involving collective bargaining agreements.  29 U.S.C. § 185(a).[13]  As a consequence of the strong federal policy of fashioning national labor standards, the United States Supreme Court has long held that Section 301 preempts state law claims that implicate the terms of collective bargaining agreements.  *Avco Corp. v. Machinists,* 390 U.S. 557 (1968); *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) (due to the "extraordinary pre-emptive power" of the LMRA, § 301 "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule").

The test for whether an action purportedly based on state law is preempted by Section 301 of the LMRA and subject to federal jurisdiction is straightforward: Will resolution of the matter "require interpretation or substantial analysis of the terms of a collective bargaining agreement"?  *Vera v. Saks & Co.*, 424 F. Supp. 2d

---

[13] Section 301 states:  "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

694, 700 (S.D.N.Y. 2006) (collecting cases); *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 n.8 (1988) ("§ 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement"); *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 851-52 (1987) ("action that necessarily rests on an interpretation of terms in a collective-bargaining agreement is pre-empted by § 301") (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218-19 (1985)).

While mere consultation of a collective bargaining agreement may not constitute "interpretation," *see Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 40 (2d Cir. 1997), any substantive analysis of a collective bargaining agreement, especially where provisions of the agreement are in dispute, necessarily requires the court to interpret the agreement. *See Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (affirming district court's denial of plaintiff's motion to remand where plaintiff's complaint challenged the legality of a provision of a collective bargaining agreement); *Dragone v. M.J. Raynes, Inc.*, 695 F. Supp. 720, 723-24 (S.D.N.Y. 1988) (denying motion to remand and finding state law claims pre-empted by § 301 because they would "involve analysis of" the collective bargaining agreement).

Here, Sanchez's Complaint against Viacom is replete with allegations that Viacom breached her Services Agreement by failing to provide the contractual

compensation for voiceover and other services. *See, e.g.*, Compl. ¶¶ 36, 49, 50, 54, 56, 57, 97; A 40, A 47, A 49, A 60. The Services Agreement, in turn, expressly refers to and incorporates the AFTRA CBA, including with respect to the services for which Sanchez claims she was inadequately compensated. Services Agreement ¶¶ 5(b), 6, 8, 10(a), 10(b), Rider A ¶ E; A 65-67, A 72. Sanchez's Complaint even alleged a direct violation of the CBA. *See* A 40 ¶ 34 (alleging violation of AFTRA Rules "under which Caitlin works"). These claims all plainly would have required interpretation and substantive analysis of the CBA.

Moreover, Sanchez also asserted that the Services Agreement was unconscionably vague. A 54-55 ¶¶ 68-74. Several of the Services Agreement provisions alleged to be insufficiently defined are references to and incorporations of provisions of the CBA. *See, e.g.*, A 54 ¶ 70 (alleging that phrase "applicable minimum under the collective bargaining agreement" is unduly vague); A 55 ¶ 72(d) (alleging that reference to "maximum extent no[t] prohibited by" CBA is unduly vague). This claim would have required interpretation and analysis of the CBA to ascertain whether, as alleged, the references to the CBA in the Services Agreement were misleading, vague or confusing. *See Harless v. CSX Hotels, Inc.*, 265 F. Supp. 2d 640, 645-46 (S.D.W. Va. 2003) (claim that "Defendant breached the terms of the collective bargaining agreement, which are alleged to be vague . . . obviously falls within the preemptive force of [§ 301 of the LMRA] . . . .").

In response, Sanchez makes the wholly conclusory assertion that her dispute would not have required interpretation or analysis of the CBA "because it is the validity of the agreement as a whole that is at issue, not its terms."  Sanchez Br. 37. This argument fails for three reasons.  First, as described above, the Complaint Sanchez filed was not limited to an attack on the validity of her Services Agreement; she included numerous allegations of *breach* of the Services Agreement, which in turn incorporated the CBA.  *See* Sanchez Br. 5 (describing her original complaint as asserting claims "for quantum meruit, unjust enrichment, and *breach* of the Services Agreement") (emphasis added).  Second, one of Sanchez's grounds for attacking the validity of the Services Agreement was that it was unconscionably vague.  Since the provisions alleged to be vague included direct references to language in the CBA, even this validity argument would require interpretation and analysis of the CBA.  Third, while Sanchez's Complaint alleged that the Services Agreement was unconscionable and should be rescinded (A 56 ¶ 75), Sanchez at no time sought to disaffirm, rescind, or otherwise reject the CBA.  Thus, even if Sanchez had disaffirmed the Services Agreement, she would still be subject to the base-line AFTRA terms that cover compensation for the work she performed and her claims would have required substantive analysis of the CBA.  In short, the CBA was at the core of Sanchez's claims and, as such, this dispute was properly subject to federal jurisdiction under § 301 of the LMRA.

Certainly, the LMRA provides an "arguable basis" for subject matter jurisdiction in this case.

### C.    The District Court Also Had Jurisdiction Based On Diversity Of Citizenship Under 28 U.S.C. § 1332(a)

This case satisfies the elements of diversity jurisdiction under 28 U.S.C. § 1332(a).  Sanchez is a New Jersey resident, Viacom is located in New York, and the amount in controversy exceeds $75,000.  A 29, A 32.  Sanchez argues that *removal* of the case from state to federal court on the basis of diversity of citizenship would have been improper because 28 U.S.C. § 1441(b) does not permit removal when the defendant is a resident of the state in which the lawsuit was brought.  Sanchez Br. 38.  While Sanchez may be correct that § 1441(b) would not have permitted Viacom to remove the case based on diversity, that is a different question from whether, at the time judgment was entered, there was an "arguable basis" for federal jurisdiction sufficient to defeat a collateral attack under Fed. R. Civ. P. 60(b)(4).

Section 1441(b) addresses the procedures for removing cases from state court to federal court.  Where removal is based solely on diversity of citizenship, § 1441(b) prevents removal if the defendant is a citizen of the state in which the lawsuit is brought.  This is a procedural rule governing removal.  Section 1441(b) does not purport to set forth a restriction on federal subject matter jurisdiction. *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 313 (2d Cir. 2005) ("section 1441(b)

is a rule of procedure and does not state a jurisdictional requirement"); *Woodward*

*v. D.H. Overmyer Co.*, 428 F.2d 880, 882-83 (2d Cir. 1970) (§ 1441 is a procedural

rule, not jurisdictional).

The federal jurisdiction statute, 28 U.S.C. § 1332(a), provides for federal

jurisdiction so long as the lawsuit is between "citizens of different States" and the

matter in controversy exceeds $75,000.  There is no dispute in this case that the

diversity requirements of § 1332(a) are met in that Sanchez, a citizen of New

Jersey, sued Viacom, a citizen of New York, for millions of dollars.  A 29, A 32.

Accordingly, whether or not removal would have been procedurally appropriate,

federal subject matter jurisdiction is appropriate in this case on the basis of

diversity of citizenship under § 1332(a).  *See Caterpillar Inc. v. Lewis*, 117 S. Ct.

467, 476-77 (1996) (upholding federal diversity jurisdiction notwithstanding

original removal from state court was procedurally improper because complete

diversity did not exist as of the time of removal).  Clearly, the fact that this case

satisfies the elements of diversity jurisdiction establishes that there is no "clear

usurpation of power" by the District Court as would be required to successfully

challenge a final judgment based on lack of subject matter jurisdiction.

## **CONCLUSION**

For all the foregoing reasons, Viacom respectfully submits that the District

Court's denial of Sanchez's motions to vacate the Settlement Agreement be

affirmed in their entirety.

Dated:  January 25, 2013
New York, New York

Respectfully submitted,

 /s/ Stephen Fishbein
SHEARMAN & STERLING LLP
Stephen Fishbein
Kirsten Nelson Cunha
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

*Attorneys for Defendants-Appellees MTV
Networks and Nickelodeon/Viacom
Consumer Products, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I, Stephen Fishbein, attorney for Appellees MTV Networks and Nickelodeon/Viacom Consumer Products, Inc., hereby certify that the preceding brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,265 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.

Dated:  January 25, 2013

  /s/ Stephen Fishbein