# 12-1860cv(L),

## 12-2670cv(CON), 12-2671cv(CON)

# United States Court of Appeals
## for the
# Second Circuit

CAITLIN SANCHEZ, performing as Dora The Explorer,

*Plaintiff-Appellant,*

– v. –

MTV NETWORKS, a division of Viacom International, Inc., dba Nickelodeon,
NICKELODEON/VIACOM CONSUMER PRODUCTS, INC.,

*Defendants-Appellees,*

BALESTRIERE FARIELLO,

*Intervenor-Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

PAFUNDI LAW FIRM,
  A PROFESSIONAL CORPORATION
269 South Beverly Drive
Beverly Hills, California 90212
(424) 832-3502

HARWOOD FEFFER LLP
488 Madison Avenue
New York, New York 10022
(212) 935-7400

MORITT HOCK & HAMROFF LLP
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES………………………………………………iii

PRELIMINARY STATEMENT ........................................................ 1

ARGUMENT ................................................................................. 6

    I.    Rule 60(b) Warranted Vacatur of the Judgment ............................. 6

        A.    The Minor's Due Process Rights Were Violated…………..6

            1.    The Minor Was Never Represented In Connection With The Settlement……………………6

            2.    The District Court's Failure to Adhere to Local Rule 83.2 Denied the Minor Due Process……..8

            3.    The Minor Preserved Her Right to Argue Denial of Due Process ………………………………11

        B.    There Was Never Any Arguable Basis for Subject Matter Jurisdiction…………………………………13

            1.    The District Court Clearly Usurped Its Power and/or Suffered From A "Total Want of Jurisdiction"………………………...13

            2.    Because the Minor Could, and Did, Disaffirm the CBA, the LMRA Was Never Arguably Implicated …………………………………………14

            3.    Because the Minor Could Not Waive Her Right to Assert the Protections Afforded by 28 U.S.C. §1441(b), Removal Was Improper………15

i

II.    The District Court Abused Its Discretion in Awarding
       Former Counsel Attorney's Fees.………………………………… 17

       A.    The District Court's Award of Attorneys' Fees
             Is Premised On A Clearly Erroneous Assessment
             of the Facts.………………………………………………… 17

       B.    The Minor Did Not, And Could Not, Consent to
             Any Fees Being Paid To Former Counsel.………………… 20

IIII.  Intervention Served No Purpose and Exacerbated
       the Conflict Between Former Counsel and the Minor.……………21

CONCLUSION ................................................................................ .22

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Berg v. Taylor*,
      148 Cal. App. 4th 809 (2007) ......................................................................7

*Caterpillar Inc. v. Lewis*,
      519 U.S. 61 (1996) ......................................................................13

*Cuoco v. Moritsugu*,
      222 F.3d 99 (2d Cir. 2000) ......................................................................13

*Doe v. Constant*,
      354 Fed. App'x 543 (2d Cir. 2009)..................................................................13

*Grace v. Bank Leumi Trust Co. of New York*,
      443 F.3d 180 (2d Cir. 2006) ..................................................................7, 12

*Grocery Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc.*,
      2013 U.S. App. LEXIS 1654 (2d Cir. Jan. 25, 2013) ..................................16

*Hakes Inv. Co. v. Lyons*,
      166 Cal. 557 (1913) ......................................................................20

*In re Nortel Networks Corp. Sec. Litig.*,
      539 F.3d 129 (2d Cir. 2008) ......................................................................17

*Nemaizer v. Baker*,
      793 F.2d 58 (2d Cir. 1986) ..................................................................13, 14

*United Student Aid Funds v. Espinosa*,
      559 U.S. 260 (2010) ......................................................................8

*Wagner & Wagner LLP v. Atkinson, Haskins, Nellis,*
*Brittingham, Gladd & Carwile, P.C.*,
      596 F.3d 84 (2d Cir. 2010) ......................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
      396 F.3d 96 (2d Cir. 2005) ......................................................................13

*White v. Daimler-Chrysler Corp.*,
   57 A.D.3d 531, 871 N.Y.S.2d 170 (2d Dep't 2008) .....................................20

*Winkler v Los Angeles Inv. Co.*
   43 Cal. App. 408, 185 P. 312  (1919) ...........................................................20

## <u>Statutes</u>

28 U.S.C. §1441(b) .................................................................................................15

Fed. R. Civ. P. 60(b)(4).....................................................................................13, 15

N.Y.C.P.L.R. 1208...............................................................................................10

## PRELIMINARY STATEMENT

When reading Defendants' and former counsel's briefs, it is easy to forget the fact that Appellant is a minor. Appellees' arguments cannot withstand scrutiny because they presumptively hold the Minor[1] to an adult standard. Shamelessly, both briefs speak of what the Minor knew or what the Minor did. That is beside the point. She is a minor, and as such, is protected by substantive and procedural safeguards grounded in sound public policy. It is not by happenstance that throughout their briefs, Appellees often refer to "Sanchez" generically without making distinctions between the parents and the child, since acknowledging the distinction would expose the weakness of their arguments and highlight the conflicts of interest.

Appellees do not address the Minor's arguments head on because they cannot. To do so would mean that they would have to address the fact that the Minor had a right not only to disaffirm her Services Agreement, but also the CBA and the Settlement Agreement because neither was properly approved. Defendants assume that even if the Services Agreement could be disaffirmed, the CBA would still be operative against the Minor. However, no support is offered for this argument.

---

[1] Terms defined in the Brief for Plaintiff-Appellant have the same meaning in this reply brief.

While this appeal raises many complex procedural issues, the ultimate issues raised by this appeal are straightforward.  Defendants first rolled the dice when they failed to get approval of the Services Agreement and then again when they jointly submitted a glaringly defective Petition seeking court approval of a settlement which Defendants later admitted in the post-judgment proceedings was designed to cure their earlier failure to obtain approval.  A-543 to A-544 ("[W]e made sure that the settlement could not be disaffirmed.")

The defects in the petition process were not minor procedural errors. Appellees attempt to make light of these defects but they are not, as Appellees have argued, mere technical omissions from an affidavit.  There is a sound reason that the applicable rules require that the affidavits supporting a petition to approve a settlement with a minor set forth the extent of the minor's damages.  How else could a court evaluate the sufficiency of the settlement?  In any other context where a court is asked to give its approval to a settlement, such as a minor's personal injury case or even a class action settlement, a court would expect the movants to describe the stage of the proceedings and the potential damages.  Not only was this not done in this action, neither former counsel nor the Minor's parents had any idea of the extent of damages, because no discovery had been conducted.  The failure of the District Court to conduct a hearing *at the time of the*

2

*approval*, deprived the Minor and her parents of an opportunity to explain the circumstances under which they signed the affidavits presented to the court.

Appellees find comfort in the fact that the District Court held three post-judgment conferences, but at no time did the District Court ever inquire as to why the Minor's parents were disavowing the earlier affidavits or question former counsel about the nature of his retainer agreement with the Minor's mother. As detailed in Appellant's opening brief, Appellees' contention that the conferences cured the deficiencies is belied by the transcripts themselves. The fact that the District Court considered former counsel's fee application long after it had approved the settlement and long after former counsel had paid himself was a fatal defect. A proper disclosure at the time of the settlement would have demonstrated that the terms of the operative retainer agreement between the Minor's mother and former counsel, and the resultant looming multi-hundred thousand dollar bill that the parents would have been responsible for, left the parents with little recourse but to acquiesce to counsel's demands. Defendants cannot distance themselves from this issue as they jointly submitted the Petition that failed to apprise the Court as to how the settlement proceeds would be allocated, which is an integral part of the petition. While former counsel (and the District Court) were inexperienced in this area (Opening Br. at 9, 11), Defendants were not. As evidenced by the hearing transcripts, even by the third conference, the District Court was unclear of the

approval process.  *See* Opening Br. at 11.   It is of no legal significance that it might have been difficult to return the parties to where they were before the case was improperly removed or where they were before the settlement was improperly approved.  The same holds true on this appeal.  If an error was committed below, the Minor is entitled to a reversal.

A major issue raised in this appeal is that the District Court failed to appreciate the significance of the fact that the major monetary component of the settlement that it approved was simply an advancement of monies that were owed or would soon be owing to the Minor and were not contested by Defendants. Merely accelerating the timing of the payment added little or no benefit to the Minor.   Former counsel never responds to this argument because the fact that the Settlement advanced monies that were otherwise due and owing completely undermines the basis of the fee award.  Neither he nor the District Court quantified the value of advancing the money.  Remarkably, while Defendants acknowledge that nearly all the cash paid to the Minor was merely an advancement, they attempt to use the "substantial" fee award itself to prove that the underlying settlement warranted the District Court's approval.

Former counsel's reference to the devastating tax consequences resulting from the settlement he negotiated as the motive for the motion to vacate and this appeal is curious since this argument has no bearing on the Minor's due process

rights or the fact that the Settlement amounted to nothing more than a nominal payment to the Minor and an audit right with no teeth.  The existence of any tax problems resulting from the Settlement Agreement simply reinforces the fact the Minor's interests were not protected during the settlement process.  Moreover, contrary to arguments made by Appellees, because the Settlement almost entirely consisted of an advancement of her money under the existing agreement, the Minor's and former counsel's interests could never have been aligned; as a result of the Settlement, she now had to pay former counsel 37.5% while only 10% would have been paid to her agent.[2]

In sum, neither Appellee has provided any basis for ignoring the procedural safeguards required to insure that settlements involving minors are properly scrutinized.  The post-judgment proceedings could not cure the lack of due process or lack of jurisdiction.  A fair reading of the proceedings below show the District Court failed to appreciate the limited economic benefit provided by the Settlement and that the terms of the retainer agreement prevented the Minor's parents or

---

[2]    Former counsel makes references to claims against the Minor's agent, CESD.  *See, e.g.,* Brief for Intervenor-Defendant-Appellee (hereinafter, "Former Counsel's Br.") at 9. These claims were not before the District Court and the settlement of those claims was never presented to any court for approval.

5

former counsel (who was rushing to push a settlement through to avoid responding to court deadlines[3]) from representing the interests of the Minor.

## ARGUMENT

### I.    Rule 60(b) Warranted Vacatur of the Judgment

#### A.    The Minor's Due Process Rights Were Violated

It cannot be overstated how Appellant's status as a minor pervades and dictates the outcome of her appeal.  Because a minor can never be held accountable for anything she does or says in a commercial or judicial setting without properly being represented and protected by either a parent, guardian, or a court, the failure of a parent, guardian, or court to protect a minor's interests denies the minor due process.  Here, contrary to statements by Appellees that the Minor was represented in connection with the settlement of her claims against Defendants, no adequate representation was ever obtained.  Even assuming the Minor was represented, the District Court failed to adhere to the very procedures designed to afford a minor due process in the attempted approval of a settlement on her behalf.

##### 1.    The Minor Was Never Represented In Connection With The Settlement

As detailed in the Minor's opening brief, there existed numerous conflicts of interest between the Minor and her parents and between the Minor and former counsel preventing either of them from properly presenting the Settlement to the

---

[3]    *See* CA-227.

6

District Court.  Opening Br. at 22.  Appellees do not address the fact that at the time the amount of a settlement offer eclipsed former counsel's lodestar, a conflict was created not only between counsel and the Minor but between the Minor and her parents because of the fee demands made by former counsel to her parents personally.  Defendants revert to a *res ipsa loquitur* gambit that ultimately results only in *non sequitur*, to wit: because the District Court awarded attorneys' fees to former counsel, she was represented.  This, of course, ignores the fact that the District Court failed to appreciate the conflicts existing at the time of the settlement, which failure naturally flowed from the failure to follow fundamental procedural safeguards mandated by Local Rule 83.2.  Defendants' attempt to distinguish *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180 (2d Cir. 2006), is unpersuasive because it is predicated on the unfounded conclusion that the Minor was properly represented in connection with the Settlement.  *Grace* clearly holds that a lack of representation is sufficient to vacate a judgment under Rule 60(b)(4) on due process grounds.[4]  Accordingly, the judgment can be vacated on this ground alone.

---

[4]     As noted in the Opening Brief at page 35, New York law is informed by California law concerning contracts with minors.  *Berg v. Taylor,* 148 Cal. App. 4th 809, 821(2007), is instructive in this regard as it held that a *judgment* is void where no guardian was appointed and there was an inherent conflict between the minor and his mother.

2.    The District Court's Failure to Adhere to
Local Rule 83.2 Denied the Minor Due Process

Appellees attempt to analogize the strictures of Local Rule 83.2, which were put in place to protect the interests of minors, with the procedural protections of the Bankruptcy Code enacted to insure that creditors have a notice and opportunity to be heard on claims they possess against a debtor estate.    It is clear why Appellees would seek to analogize the due process rights at issue in this action to the line of bankruptcy cases where the rules were not strictly enforced: because it was the only way they could support their specious position that a district court may "dispense with state procedures *where appropriate*."    Defendants' Br.[5] at 20-21 (emphasis added).    However, protecting the due process rights of creditors is much different than protecting the rights of minors and the text of Local Rule 83.2 requires a contrary conclusion.    Under Local Rule 83.2, a district court may only dispense with the procedural protections afforded minors "*upon good cause shown*."    L.R. 83.2 (emphasis added).    The record is clear that the District Court made no such findings.    It simply entered, without conducting a hearing, the form of order submitted by the parties.

Appellees' reliance on *United Student Aid Funds v. Espinosa*, 559 U.S. 260 (2010), is thus misplaced.    *Espinosa* did not involve a minor.    *Espinosa* involved

---

[5]    "Defendants' Br." refers to the Brief for Appellees MTV Networks and Nickelodeon/Viacom Consumer Products, Inc.

8

a party who had received notice and opportunity to be heard concerning the procedural infirmities it neglected to assert in bankruptcy court concerning the discharge of debt owed to it by the debtor.  Here, a minor who was not properly represented was subjected to the purported approval of a settlement with little or no benefit to her without adequate protections of her procedural and substantive rights.  Appellees' references to what the Minor knew or was informed about are simply red herrings, as it is up to the adults representing her and ultimately the court to protect her.  It was the failure to follow the many procedural safeguards in Local Rule 83.2 that denied the Minor the opportunity to be heard.  For example, and as explained in her opening brief, at the time the judgment was entered and the Court approved the settlement, the District Court should have been apprized of: (1) the numerous conflicts of interest;  (2) the fact that the Minor had the ability to disaffirm the underlying agreements at issue;  (3) the extent of the damages suffered by the Minor;  and/or (4) the fact that the lion's share of the settlement amount was only an advance of monies to which the Minor was already entitled. The fact that Appellees repeatedly make reference to the high standard the Minor must meet to have been successful on the Rule 60(b)(4) motion only highlights the reason that these issues should have been presented to the District Court at the time it was being asked to approve the Settlement.  It is quite a different mindset for a court being asked to vacate its own order after-the-fact.

Appellees can only note the District Court's after-the-fact, deficient attempts to satisfy certain of Local Rule 83.2's requirements.   Defendants attempt to mislead this Court here, too.  For instance, Defendants assert that "[t]he Court also received and considered extensive analysis of Sanchez's damages claims in connection with her Rule 60(b) motions." Defendants' Br. at 23.   First, there was only one Rule 60(b) motion.[6]  Second, the Minor explained to the District Court both in briefing and at argument that it was impossible to know with any precision the full nature of her damages without having had discovery.  A-10: Docket No. 37 at 10-11; Docket No. 63 at 19-20; A-437 at 13-25; A-539 at 7-12; A-541 at 4-13.  Third, former counsel relies on the fact that the offer ultimately made by Defendants far exceeded what had had been offered at the beginning of the case.  Former Counsel's Br. at 12-13.  This begs the question of the quantum of damages.

Defendants' argument that it was incumbent on the Minor to *request* a hearing in connection with the approval of the settlement is also contrary to Local Rule 83.2.[7]  Defendants' Br. at 23.  Defendants and former counsel attempt to use

---

[6]     There is one Rule 60(b) motion at issue here that resulted in one final order from which the Minor is appealing.  Defendants' motion to dismiss this appeal as untimely was denied.  Appellate Docket No. 104.

[7]     As discussed in the Opening Brief, Local Rule 83.2 requires that an application to approve an infant settlement shall conform "as nearly as may be" to the applicable New York statutes "absent good cause shown."   CPLR 1208(d) requires that a hearing be held in which the Minor is in attendance.  There was no good cause shown and in making this argument Defendants again failed to

the post-judgment conferences to cure the due process violations that took place in

the approval process and claim that these conferences are evidence that no injustice

occurred here.  This misses the point completely.  Aside from the fact that nothing

short of vacatur of the judgment could remedy any of the errors that occurred at the

time the District Court considered the Settlement, the District Court stated that it

would not consider the jurisdictional issues raised by the Rule 60(b)(4) motion,

was only interested in discussing the audit provision of the Settlement Agreement,

heard from the Minor as a courtesy, and made clear that it did not appreciate the

implication of its approval of the Settlement vis â vis the Minor's statutory right to

disaffirm the underlying agreements.  It begs credulity that Appellees truly find

any comfort in the post-judgment conferences given that they reinforced the fact

the system had failed the Minor.  As a result, the judgment should be vacated on

due process grounds.

> 3.    The Minor Preserved Her Right to Argue
>        Denial of Due Process

In her motion and brief supporting the motion to vacate the judgment, the

Minor clearly articulated that she was moving under "all of the … grounds" stated

in every subsection of Rule 60(b), including that it was invalid for lack of due

---

distinguish between the Minor and her parents by referring to "Sanchez" generally.
Defendants' Br. at 23.  The Minor assumes in this instance that "Sanchez" refers
to the Minor.  Either way, former counsel conceded in these proceedings that he
misinformed the Sanchez family that no hearing was required.  Opening Br. at 9
n.6.

process.  *See* A-7: Docket No. 37 at 8-9 ("The Sanchez' did not know their rights under the law, including their right to appear before this Court to object to the Infant's Compromise . . . .  Because [former counsel] perverted the infant's compromise statute, he made it impossible for this Court to do its job to protect [the Minor's] rights. ") .  Defendants elevate form over substance when they reduce the Minor's opening motion papers to an argument that former counsel perpetrated frauds on the court.  To the contrary, her memoranda in support of her motion are replete with a detailed telling of the procedural infirmities that fatally infected the settlement approval process.  *See id. passim*.  The August 23, 2011 reply brief supporting the Rule 60(b)(4) motion specifically states that "Rule 60 (b) permits this settlement to be vacated if it so fraught with irregularities it literally violates [the Minor's] due process rights. *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006)."  A-8: Docket No. 47 at 4.  This articulation of the Minor's due process rights is not some "fleeting reference" to former counsel's "frauds."  Defendants' Br. at 16 n.8.  It is a specific argument with specific on-point legal authority concerning the fact that the District Court's failure to adhere to Local Rule 83.2 violated the Minor's right to due process.  Defendants do not, because they cannot, account for the fact that the issue of due process was further articulated by the Minor's undersigned counsel both in briefing and argument before the District Court months before the Order which is the subject of this

appeal was entered.   *See* A-10: Docket No. 63 *passim* (explaining throughout how failure to adhere to specific procedural safeguards of Local Rule 83.2 rendered settlement fatally defective); A-482; A-539-541.   As discussed in the Minor's opening brief and above, there is one motion at issue here that resulted in one order from which the Minor is appealing.   Opening Br. at 10-15.   Because the Minor raised her due process arguments in the District Court throughout the briefing and argument on her Rule 60(b) motion, all of Defendants' cited authority (at page 16 n.8) are inapposite.   *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n.4 (2d Cir. 2000)(holding that opaque statement concerning argument made for first time on appeal concerning right to replead complaint was inadequate for purposes of appellate review); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005)(denying consideration of argument concerning class action attorney's fees); *Doe v. Constant*, 354   Fed. App'x   543, 544 (2d Cir. 2009)(declining to consider argument raised for first time on appeal).

B.    There Was Never Any Arguable Basis for
Subject Matter Jurisdiction

1.    The District Court Clearly Usurped Its Power
and/or Suffered From A "Total Want of Jurisdiction"

This Court   in *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986), held among other things, only a "total want of jurisdiction" or "clear usurpation of power" makes a judgment void for purposes of Rule 60(b)(4).   Appellees

13

repeatedly cite to this language as a talisman to defend the propriety of the District Court's jurisdiction, but in doing so never respond to the arguments made by Minor in this appeal. *Nemaizer* and the other authority cited by defendants involved a district court making a good faith legal error concerning whether it possessed subject matter jurisdiction. Those circumstances are very far from what happened below. Here, among other things, the District Court, except for its conclusory finding in the Order, declined to consider the jurisdictional issue. Thus it is difficult to compare the actions of the court below with the decisions relied on by Defendants. Here, the Minor has demonstrated that there is a "total want of jurisdiction" as required by *Nemaizer* and that by failing to adhere to Local Rule 83.2 without good cause shown, the District Court "usurped its power."

      2.      Because the Minor Could, and Did, Disaffirm the CBA, the LMRA Was Never Arguably Implicated

Defendants' arguments on jurisdiction presume that the Minor could not disaffirm the CBA. The fact is that the Minor could disaffirm any agreement that was not properly approved. Defendants provide no authority for their position because there is none. Defendants state in a conclusory fashion that the Minor would still be "bound by the baseline AFTRA terms that cover compensation for the work she performed" even if she had disaffirmed the Services Agreement. Defendants' Br. at 31. They are wrong. There is no question that the complaint filed against Defendants sought damages for additional compensation from

14

Defendants for work that had been performed, but the reason that the Minor could bring suit against Defendants derived from her right as a minor to disaffirm her obligations if the contracts were not properly approved in accordance with the relevant statutory provisions.

Because the interpretation of any term of the CBA was not necessary to the resolution of the Minor's claims asserted against Defendants in her state court complaint, Section 301 of the LMRA clearly did not apply and could not have formed even an arguable basis for subject matter jurisdiction. Accordingly, the judgment should be vacated under Rule 60(b)(4).

> 3. Because the Minor Could Not Waive Her Right to Assert the Protections Afforded by 28 U.S.C. §1441(b), Removal Was Improper

Defendants do not dispute that they are resident defendants and that as a result removal would have been improper under 28 U.S.C. § 1441(b): "Any [civil action based on diversity jurisdiction] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Defendants now argue *for the first time on appeal* that the Minor waived her right to assert Section 1441(b)'s protections because, notwithstanding that they removed on the grounds of federal question jurisdiction, diversity jurisdiction would have existed if plaintiff chose to file suit

in federal court.[8]   Here again Defendants ignore the fact that Appellant is a Minor and did not have the legal capacity to waive anything as she was not properly represented at the time of removal.   First, the retainer letter between former counsel and the Minor's mother makes no mention of the Minor and does not otherwise state that the Minor's mother executed the agreement as a guardian for the Minor.  A-355 to A-364.  Second, as Defendants are aware, the Minor's parents were required to execute the Parental Agreement (*see* Opening Br. at 4) which purported to act as an indemnity agreement in the event that the Minor sought to disaffirm the Services Agreement.[9]   Because the Minor could not have waived her rights without proper representation, Defendants' argument on this point is without merit and the District Court did not have diversity jurisdiction below.

In any event, Defendants' argument cannot be considered for the first time on appeal.  "'[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.'" *Grocery Haulers, Inc. v. The Great Atl. & Pac. Tea Co., Inc.*, 2013 U.S. App. LEXIS 1654, at *3 (2d Cir. Jan.

---

[8]     Defendants' cited authority is distinguishable because none involved a minor plaintiff.  Further, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996) involved a case which was removed based on diversity, not on federal question jurisdiction  and at the time of trial all infirmities concerning subject matter jurisdiction based on diversity had been cured.

[9]     Defendants argue that the conflict did not exist because a lawsuit was commenced against Defendants anyway.  Defendants' Br. at 20.   The fact that the claims were asserted does not have any bearing on the potential conflict created by the Parental Agreement.

25, 2013)(quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (alteration in original) (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)).   "Although [the Court] may exercise discretion to consider waived arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below."  *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) (internal quotation marks, brackets, and ellipsis omitted).  The Minor clearly raised the issue of whether diversity jurisdiction was proper in her briefing below (A-10: Docket No. 63 at 21-24).  In their reply brief filed on March 20, 2012 (*id*.: Docket No. 71 at 8-12) and at two subsequent oral arguments (A-470 to A-490 and A-508 to A-548), Defendants did not address the issue of diversity jurisdiction and therefore waived any argument concerning it on appeal.

## II.   The District Court Abused Its Discretion in Awarding Former Counsel Attorney's Fees

### A.   The District Court's Award of Attorneys' Fees Is Premised On A Clearly Erroneous Assessment of the Facts

As former counsel concedes, reversal of the District Court's award of attorney's fees is warranted where it is based "on a *clearly erroneous* assessment of the evidence."  Former Counsel's Br. at 26 (quoting *Kerin v. U.S. Postal Serv.*,

218 F.3d 185, 188-89 (2d Cir. 2000) (emphasis supplied by Former Counsel)). The record demonstrates that even with the benefit of the post-judgment proceedings, the District Court failed to appreciate the nominal value of the settlement.

The clearest evidence of this fact is that the District Court simply adopted former counsel's characterizations concerning the value of the cash component of the settlement. As acknowledged by Defendants in their brief, virtually all of the money paid pursuant to the Settlement represented an advancement of fees to which the Minor already was entitled under the Services Agreement. *See, e.g*., Defendants' Br. at 4. Former counsel never bothered to quantify the value of the advancement of the money in the proceedings below or in its appeal brief. The District Court was seduced by the seemingly large upfront payment. *See, e.g*., A-485: Transcript of March 15, 2012 (The settlement "has provided her with a great deal of cash"). Nevertheless, both the District Court and former counsel were required to understand the extent and nature of the Minor's damages before determining that a nominal sum (see Opening Br. at 7; Defendants' Br. at 4,6) plus an advancement of monies not contested by Defendants was sufficient to justify a 37.5% contingency fee, which was then applied not just to the "new value," but also to the advancement. Despite statements to the contrary by both Defendants and former counsel, the audit rights contained in the Settlement Agreement also

18

did not provide the Minor with anything that she would not have otherwise been entitled to in the normal course of the administration of the existing agreement. Among other things, the audit provision was not self-effectuating, it requires the Minor to expend tens of thousands of dollars on forensic accountants to exercise them, and it did not contain protections that should be afforded a Minor.  Opening Br. at 23-24.   Also, fees were awarded to former counsel for including this provision, even though the Court knew he no longer represented the Minor and other counsel would perform the services.  SPA-10.

As a consequence of its clearly erroneous failure to apprehend the value of the settlement, the District Court not only based the fee award on a misunderstanding the value of the services performed, but sanctioned an award at the high end of the contingency fee spectrum of 37.5%.  This coincidentally matched the amount that former counsel *had paid himself* in accordance with the retainer agreement with the Minor's mother without court approval.  Here again, the District Court appeared to render its decision in a way that did not require unscrambling of the egg.  It reduced the requested award on fees going forward for monies recovered from an audit, presumably because those had not yet been paid. As discussed above, it was an abuse of discretion to award any fees for amounts to be paid to the Minor going forward.    In sum, the Order awarding fees should be vacated as an abuse of discretion.

B.     The Minor Did Not, And Could Not, Consent to Any Fees
        Being Paid To Former Counsel

Former counsel argues that the Minor "consented" to the fee award based on the terms of the retainer agreement with her mother.  Former Counsel's Br. at 29-31.  The cases cited in support of this argument stand for the unremarkable argument that generally fee agreements between willing parties should be enforced.[10]  Former Counsel's Br. at 29.  Here again, former counsel disregards Appellant's status as a minor and routinely interchanges the Minor with her mother and ignores Local Rule 83.2 which looks to state law in this regard.  The law is clear that with respect to a minor, it is the Court that is required to make the determination as to the amount of fees and that a retainer agreement is not binding on the Court.  *See White v. Daimler-Chrysler Corp.*, 57 A.D.3d 531, 871 N.Y.S.2d 170, 173-74 (2d Dep't 2008)("The court determines the value of the services rendered by the attorney regardless of what agreement he and the guardian may have made.");  s*ee also Wagner & Wagner LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 89 (2d Cir. 2010)(citing *White* and explaining that "under N.Y. Judiciary Law § 474, a contract between the

---

[10]     California law is instructive here as well.   Numerous decisions under California law hold that a minor cannot give a delegation of power to enter into a contact, and that any contracts entered into under a delegation of power are void. *See Hakes Inv. Co. v. Lyons* 166 Cal. 557, 160 (1913).  Even if the minor adopts the parents' action, the parents are not retrospectively made the agent of the minor. *See Winkler v Los Angeles Inv. Co.* 43 Cal. App. 408, 410-11, 185 P. 312, 313 (1919).

attorney and the infant guardians providing for a contingency fee is to be considered by the judge, but it is not binding").

## III. Intervention Served No Purpose and Exacerbated the Conflict Between Former Counsel and the Minor

Intervention was granted by the District Court after former counsel had received his fee and after a notice of appeal had been filed on the denial of the motion to vacate. Thus, at the time the District Court gave former counsel intervenor status, it served no purpose. As former counsel admits, his participation in the proceedings below was to protect his interest in the fees he sought and received. Former Counsel's Br. at 34-35.

The Minor's objection to his status is not simply a matter of formality. Former counsel has clearly evidenced his antagonism toward the Minor and the positions that she is taking in the litigation. To be sure, as the record reflects, in defending his fee, former counsel provided copies of confidential client communications to Defendants. *See* CA-95 to CA-589. As Defendants were not paying his fees, these documents should have only been provided to the Court. If these proceedings continue, former counsel should have no role in these proceedings as an intervenor party.

The fact that the Minor did not object to former counsel's attempts to defend the amounts that he already paid himself does not mean that she waived her right to

21

contest him otherwise participating in this proceedings.  The law would support the former but not the latter.

In sum, former counsel cannot demonstrate any legitimate interest in these proceedings.  His only interest is his fees and the District Court could and did address this without granting intervenor status and without risking further compromise of client communications.

## CONCLUSION

For the foregoing reasons, the District Court's orders denying the motion to vacate and granting the fee and intervention applications should be vacated with instructions to remand this action to state court.

Dated:  February 8, 2013

Respectfully submitted,

Harwood Feffer LLP

By:   s/Robert I. Harwood
Robert I. Harwood
Daniella Quitt
Peter W. Overs, Jr.
488 Madison Avenue, 8th Floor
New York, New York 10022
Telephone:  (212) 935-7400

Robert M. Tils
Moritt Hock & Hamroff  LLP
400 Garden City Plaza
Garden City, New York 11530
Telephone:  (516) 873-2000

Robert N. Pafundi
Pafundi Law Firm, APC
269 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (424) 832-3502

Attorneys for Plaintiff-Appellant

## Certificate of Compliance With Rule 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

Dated:  February 8, 2012

  /s/ Daniella Quitt
Daniella Quitt
Attorney for Plaintiff-Appellant
